[Civ. No. 8381.  First Appellate District, Division One.—November 26, 1932.]

FRANK P. ALVERNAZ, Respondent, v. H. P. GARIN COMPANY (a Corporation), Appellant.

682

David M. Burnett, John M. Burnett and Vincent H. O'Donnell for Appellant.

Owen D. Richardson and Thomas R. Dougherty for Respondent.

THE COURT.—The above action was brought to recover for the alleged breach of a contract to purchase all the green and ripe tomatoes grown by plaintiff on 30 acres of land.

The plaintiff was referred to in the contract as the grower, and defendant corporation as the buyer and shipper.

The action was tried before a jury, which returned a verdict for the plaintiff in the sum of $1600.50, and defendant has appealed from the judgment entered thereon. As grounds therefor it is claimed that there was no evidence of a breach of contract and that the verdict for damages is unsupported. Appellant also complains of certain rulings and instructions by the trial court and alleges that plaintiff's counsel were guilty of prejudicial misconduct.

Under the contract—which was executed on January 30, 1930—plaintiff agreed to plant the land mentioned with tomatoes during that year, and the instrument, among other provisions, contained the following:

"All green tomatoes delivered under this contract shall be of first class merchantable condition, free of frost and rain damage and fit for eastern markets, and passed as grade U. S. No. 1 by the inspector of the State of California, Department of Agriculture.

"The grower shall deliver all ripe tomatoes under this contract to buyer and shipper, and he shall sell at the going price set by the canners of    per ton f. o. b. roadside. All ripe tomatoes shall be picked and delivered to cannery in accordance with their contract.

"The time of harvesting said crop, both commencing and ending, shall be entirely up to the shipper, and he will at all times have his agents and representatives keep in close touch with the grower so as to post him as to growing . . . packing and delivery of the same.

"The grower shall receive under this contract the price of 40 cents per pack-out lug from commencement of season to October 1st of same season guaranteed, and 50 cents per pack-out lug after October 1st guaranteed to the finish of the

season. Should the eastern markets warrant the payment of more the shipper will advance price in accordance with going f. o. b. sales but never less than the above mentioned prices.''

"All cull tomatoes not fit to ship either green or ripe shall be disposed of by the buyer and shipper to the best of his ability, and shall pay grower in accordance with the prices paid for same.''

The complaint alleged that during the months of August, September and October, 1930, defendant refused to accept of the crop 140 tons of ripe tomatoes, the growing price for which set by the canners was $15 per ton, and that plaintiff in an effort to minimize his damage in this respect sold a portion of the same for $1492.36; further, that defendant refused to accept or dispose of the culls, and in November, 1930, refused to accept further deliveries under the contract, by reason of which refusal approximately 100 tons of tomatoes rotted in the field.

The testimony shows that plaintiff was notified by defendant early in August that no more ripe tomatoes would be received. During the season the latter received and paid for about 87½ tons of green tomatoes, but between November 10 and 15, 1930, ceased to accept deliveries, and on November 17, 1930, by letter gave notice in substance that no more tomatoes would be received. On these dates, according to plaintiff and his witnesses, there remained between 75 and 100 tons unpicked. It appears that there was some frost in the neighborhood previously, but the testimony sufficiently shows that the tomatoes received no injury therefrom. It was also shown that the amount of ripe tomatoes sold by plaintiff in his effort to reduce his damage and the sum received therefor were substantially as alleged in the complaint.

■ In this connection, as shown by the contract, defendant agreed to pay for ripe tomatoes "the going price set by the canners . . . f. o. b. roadside". Defendant claims that no price was fixed for the variety grown by plaintiff, namely, Stone tomatoes; that the price actually fixed at the commencement of the season, which was $15 per ton, was for canning tomatoes, a different variety, and that the prices received by plaintiff for those portions of the crop which he sold to the canners (and which prices were less than $15

per ton) were the going prices for Stone tomatoes, and that in this particular plaintiff suffered no damage.

While the record contains testimony by its witnesses tending to support defendant's contention, nevertheless the contract contemplated a sale of the ripe tomatoes for canning, and the evidence shows that portions were sold and used for that purpose. Whether the variety of tomatoes raised by plaintiff was included in the price of $15 per ton fixed by the canners is by no means clear from the evidence; but the circumstances shown, together with the testimony, were sufficient to support that inference. ■ According to defendant's interpretation of the contract the provision therein that "the time of harvesting said crop, both commencing and ending, shall be entirely up to the shipper . . . " gave the right to the shipper to determine when the season should begin and end. We cannot agree with this view. The provision should be read in connection with the remainder of the clause and the succeeding paragraph, the clear intention being to allow the shipper to advise the grower when as a matter of good husbandry the crop should be picked and delivered, but not to give the shipper the right to arbitrarily refuse deliveries which met the requirements of the contract.

A contract must receive such interpretation as will make it reasonable (Civ. Code, sec. 1643; 6 Cal. Jur., Contracts, sec. 169, p. 271). Here the interpretation urged by defendant would render the contract unreasonable and unfair, and its language does not require such interpretation.

■ Appellant further claims that the evidence was insufficient to show the quantity, if any, of the unpicked tomatoes which were of the grade required by the contract.

There was testimony showing that no damage was done to the tomatoes by frost until near the 1st of December. While, as testified, there were one or two light frosts about November 1st, these did no more than injure the leaves on the vines. According to the contract green tomatoes were to be in first-class merchantable condition, free from worms, frost and rain damage, fit for eastern markets and passed as grade United States No. 1 by the inspector of the department of agriculture. The evidence, as stated, sufficiently shows that no material damage was caused by frost, and no damage by worms or rain is claimed. According to the testimony the term "grade U. S. No. 1", used in the contract, meant

a tomato which was solid and smooth, without blemishes and properly matured, maturity meaning about to ripen. The quantity of such tomatoes was testified to, the estimates being in excess of the amount impliedly found by the jury. The detriment in cases of this character cannot always be measured with mathematical accuracy; but, as has been frequently held, reasonable certainty only is required (*Holt Mfg. Co.* v. *Thornton,* 136 Cal. 232 [68 Pac. 708]; *McConnell* v. *Corona City Water Co.,* 149 Cal. 60 [85 Pac. 929, 8 L. R. A. (N. S.) 1171]; *Sobelman* v. *Maier,* 203 Cal. 1 [262 Pac. 1087]), and we are satisfied that the conclusions of the jury were fairly sustained by the evidence.

With respect to the culls, which defendant agreed to dispose of to the best of his ability, the record discloses that these were returned to plaintiff, who sold a portion to the canneries. Whether the defendant had the ability to dispose of the same is not clear; but regardless of this the quantity of green and ripe tomatoes which complied with the contract and which defendant refused to accept was sufficient without this item to justify the damages allowed by the jury.

It is suggested that no effort was made by plaintiff to minimize his loss with respect to the green tomatoes which remained unpicked, but the evidence sufficiently shows that there was no market for these after defendant's refusal to accept further deliveries.

Defendant complains of the court's refusal to instruct the jury that plaintiff must prove that the ripe tomatoes which it failed to receive conformed to the standard provided by section 36 of the California Fruit, Nut and Vegetable Standardization Act of 1927; but, as provided by section 13 of the act, its provisions are not to be construed to prevent a grower of vegetables from selling and delivering the same unpacked and unmarked as a part of his crop in bulk to a packer; and said section 36 only requires tomatoes to conform to the standard therein provided when the same are sold in any container or subcontainer (Stats. 1927, p. 1845; Stats. 1929, pp. 102, 108). In view of these provisions the refusal of the instruction was proper.

Another instruction offered by defendant stated that plaintiff must prove that the tomatoes not received were

sound and merchantable, this being the warranty implied under the provisions of section 1768 of the Civil Code (before its repeal in 1931.) A breach of warranty was not alleged by defendant. It is the rule that warranties not pleaded cannot be relied upon either in support of an action or as a defense (*Kuhlman, Salz & Co.* v. *Sugar etc. Mfg. Co.*, 153 Cal. 725 [96 Pac. 369]; *American Steel Pipe etc. Co.* v. *Hubbard*, 42 Cal. App. 520 [183 Pac. 830]), and the burden of proving a breach rests upon the party relying upon a warranty (55 Cor. Jur., p. 837; *Waltz* v. *Silveria*, 25 Cal. App. 717 [145 Pac. 169]; *Edson* v. *Mancebo*, 37 Cal. App. 22 [173 Pac. 484]). For these reasons the instruction was properly refused.

As stated, there was sufficient evidence to support the conclusion that the tomatoes were in accordance with the contract; and while there was conflicting testimony the weight to be given thereto and the credibility of the witnesses were questions for the jury (Code Civ. Proc., sec. 1847), and their implied finding against appellant's contention cannot be disturbed.

A third instruction offered was modified. As modified it stated the substance of the instruction offered, and the same is true of a fourth instruction, which was also modified. Neither as given was erroneous or prejudicial and both fairly stated the law.

Defendant also requested that special findings be made by the jury, and a refusal is assigned as error. The submission of special issues is discretionary, and no abuse of discretion has been shown (*Estate of Witt*, 198 Cal. 407 [245 Pac. 197]).

Plaintiff's counsel in the course of his argument to the jury accused defendant of unfairness by reason of its failure to comply with its contract. There was further reference to the necessity of compelling buyers and canners of produce to deal fairly with producers. The remarks were assigned as misconduct.

In view of the evidence the first part of the argument was fairly justified, and the reference to buyers and canners generally, while not supported by the evidence, cannot reasonably be said to have been prejudicial to a degree which requires a reversal of the judgment.

The verdict finds reasonable support in the evidence, and no error has been shown which can fairly be said to have resulted in a miscarriage of justice.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 24, 1932.