[Civ. No. 1313. Fourth Appellate District.—August 15, 1934.]

CONSOLIDATED PIPE COMPANY (a Corporation), Respondent, v. JOHN GUNN, Appellant.

Jas. W. Campbell and G. L. Aynesworth for Appellant.

Siemon & Claflin for Respondent.

JENNINGS, J.—Plaintiff instituted this action for the purpose of foreclosing a lien on defendant's land for the price of certain material and supplies purchased by defendant and used in drilling a water well on said land. The defendant filed a combined answer and cross-complaint to the complaint. In the answer it was admitted that plaintiff had furnished the material and supplies and that the price charged therefor was the amount alleged in the complaint but denied an indebtedness to plaintiff of any amount for the reason set forth in the cross-complaint. The last-mentioned pleading alleged that the defendant purchased certain well-drilling supplies including casing shoes from plaintiff and proceeded to drill a well on his land using the quality and type of casing shoe which the plaintiff had advised to be used and which defendant had purchased from plaintiff; that when the well had reached a depth of 150 feet the casing became jammed and defendant was unable to proceed further, whereupon, acting on plaintiff's advice, he procured

a smaller sized casing and after the well had been drilled to an additional depth the casing shoe collapsed and it became necessary to remove the casing; that thereupon another casing shoe was procured from plaintiff and fastened to the casing and drilling was resumed; that when the well had been drilled to a somewhat greater depth the second shoe collapsed through no fault of defendant and could not be withdrawn or repaired so that it became necessary to abandon further drilling of the well which had been completely damaged and ruined by reason of the collapse of the casing shoe. The final paragraph of the pleading alleged that the defendant had been damaged in the amount of $2,000 by the collapse of the shoe and the consequent injury to the well. The cross-complaint concluded with a prayer that plaintiff take nothing by his complaint and that defendant have judgment against plaintiff for the amount mentioned.

When the case was called for trial plaintiff's counsel stated that it would not rely upon the claim of lien and would merely seek the recovery of a personal judgment against defendant for the price of the supplies furnished as alleged in the complaint.

Upon the conclusion judgment was rendered in plaintiff's favor for the amount demanded in the complaint reduced by the sum of $95.75, which the court allowed by way of credit for the expense incurred by defendant in removing the casing from the well after the collapse of the first casing shoe. The plaintiff made no objection to the allowance of the above-mentioned amount as a credit against the sum which was demanded by the complaint. From the judgment thus rendered the defendant has prosecuted the present appeal.

In support of his appeal the appellant first contends that the second casing shoe was sold under an implied warranty that it was reasonably fit for the purpose for which it was procured. It appears to be conceded that there was a written waiver of warranty as to the first casing shoe supplied by respondent. The second shoe was, however, sold on open account without any waiver of warranty. Since this was the situation developed by the evidence it is urged that a warranty that the article was reasonably fit for the purpose for which it was required was implied in accordance

with the provisions of subdivision (1) of section 1735 of the Civil Code.

The trial court found that the second casing shoe was purchased by appellant without a waiver of any warranty implied by law. It is our understanding that respondent does not here deny that by virtue of the provisions of the above-mentioned statute a warranty of reasonable fitness was implied. We shall therefore assume that appellant's first contention is correct and that he was entitled to rely on an implied warranty of fitness.

The second contention advanced by appellant is that the trial court drew the erroneous conclusion that respondent was entitled to recover after it had found that the second casing shoe was injured or damaged and that the cause of such injury or damage was unknown. It is urged that the effect of the court's conclusion that respondent was entitled to recover under the state of facts developed by the evidence was to impose an unwarranted burden upon appellant. This contention obviously requires some consideration of the evidence which was produced during the trial.

The record shows that respondent first proved that the supplies for the recovery of whose price the action was brought had been furnished to appellant on his order and rested its case. Appellant thereupon presented evidence which consisted of the testimony of the well driller who controlled the drilling operations in which the casing shoe collapsed. This witness testified that at the time the shoe collapsed the formation in which the drilling was being done was a soft blue clay; that the drilling was accomplished by means of a mud scow consisting of a piece of pipe about 15 feet in length having a valve and a cutting blade at the bottom; that the mud scow was located inside the casing and was raised and lowered; that as the scow was dropped into the well it cut away a part of the formation which then passed through the valve in the bottom of the scow into a bucket which when filled was raised to the surface; that at the time the casing shoe collapsed the casing was exactly at the same depth as the scow; that the diameter of the casing was 10 inches and that of the scow was 9½ inches; that the casing shoe was fastened to the bottom of the casing and that it was about ¾ of an inch larger than the casing. The witness also testified that a pressure of 3 tons

weight was applied to the top of the casing to cause it to follow the mud scow. The witness further testified that he did not know what happened when the drilling had proceeded to a depth of 385 feet; that an attempt was made to drill deeper but that it was impossible to force the drilling tools through the casing shoe, which indicated that the shoe "had got out of shape some way". The witness was asked if he knew what causes a casing shoe to collapse, to which he replied by stating that several different things might cause such a result. He was requested to be more specific and gave as one possible cause the forcing of a casing through a hard substance "with not a big enough hole". The witness stated that the shoe which had collapsed or had become so misshapen that it no longer permitted the passage of drilling tools was a steel shoe known as a "Henderson Special"; that he could not recognize any defect in it by inspection and that he could not attribute the difficulty that was encountered to any defect in the shoe, that he did not know how the collapse occurred, that it did not occur from any defect in the casing. The witness also testified that it was possible that the collapse occurred by reason of the fact that a harder formation than that through which the drilling had been proceeding was encountered and that the external force which was being applied to the top of the casing might have caused the edge of the casing shoe to crumple when it was brought in contact with such harder formation. He further stated that the well was straight and was perpendicularly drilled.

On rebuttal respondent produced a witness who testified that he had known of casing shoes collapsing and gave as possible reasons for such collapse other than defectiveness of the material of which the shoe is made, the pinching of the shoe between boulders or in a hard clay formation where the hole was not sufficiently large.

By way of explanation, it may be remarked that a casing shoe is a sort of cutting ring having the lower edge sharpened for the purpose of cutting the material with which it comes in contact as it is forced down into the ground. It is attached to the lower end of the casing and is constructed of material which is considerably heavier than the casing. The particular shoe which formed the basis of the present controversy was constructed of plow steel. It was 12 inches

in diameter, 3 inches in height and ⅜ of an inch in thickness.

In support of the contention that the trial court incorrectly concluded that respondent was entitled to recover the price of the supplies it is urged that when appellant had shown that the casing shoe had collapsed under normal working conditions, the burden then shifted to respondent to show that the collapse was due to some cause other than defective material or improper workmanship.

It is our conclusion that appellant's contention is not sustainable on the peculiar facts developed by the evidence in this case. It must, we think, be conceded that the cause of the collapse or failure of the casing shoe was not shown. The court's finding that the cause of collapse was unknown is amply supported by the evidence. The foundation of appellant's cross-complaint was that a warranty of fitness was implied by law and that there was a breach of such warranty which resulted in the abandonment of the well and which was therefore the cause of the damage suffered by appellant in the expense incurred by him for drilling the well. It is obvious that the burden rested upon appellant to establish to the satisfaction of the trial court that there was a breach of the implied warranty of fitness. As we understand appellant's contention it is conceded that it was incumbent upon appellant to make a showing that there was a breach of warranty but it is urged that appellant sufficiently sustained the burden by showing that there was a failure of the casing shoe under normal drilling conditions and that thereupon the burden shifted to respondent to show that the cause of the collapse was something other than inferiority in the quality of material or faulty workmanship in the manufacture of the article which caused it to be unfitted to perform the work for which it was procured. If appellant's contention in this regard may be sustained in this particular case it simply means that the law implied not a warranty of reasonable capacity but a guaranty that the article would prove capable of doing the work. In other words the result would be that respondent became an insurer. While it is true that, under the circumstances here appearing, it was impossible as a practical matter for appellant to make any further showing of incapacity than he

did, it is likewise true that it was impossible for respondent to show that appellant was negligent in operating the casing shoe or that the failure occurred because of the shoe coming in contact with some harder material 385 feet below the surface of the earth. We think that when an article of the character here described is purchased for the purpose of facilitating the drilling of a well to a distance several hundred feet below the surface of the earth the seller does not guarantee that it will not fail in the accomplishment of the task without regard to the character of formation that may be encountered as the drilling progresses. The very nature of the work in which the article is used is such that there is very considerable risk that the article, although the material of which it is made is in no respect defective and it is properly fashioned, may nevertheless become so misshapen, due to its being pinched between boulders or by reason of coming in contact with an exceedingly hard formation that the drilling tools can no longer pass through it. The aforementioned testimony of appellant's well driller shows that the above-mentioned occurrences are by no means unusual risks encountered in drilling operations.

It is therefore our conclusion that the evidence amply sustained the trial court's findings and that the legal conclusion that respondent is entitled to recover from appellant the price of the supplies was properly drawn from the court's findings of fact.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.