[Civ. No. 5973.   Third Appellate District.—December 21, 1938.]

PAUL YEREMIAN, Respondent, v. TURLOCK DEHY-DRATING & PACKING CO., INC. (a Corporation), Appellant.

Hjelm & Hjelm for Appellant.

Stephen P. Galvin for Respondent.

STEEL, J., *pro tem.*—Defendant has appealed from a judgment in favor of plaintiff for damages alleged to have been sustained as a result of the failure of the defendant to furnish plaintiff with sufficient boxes in which to place grapes when ready to harvest or pick, thereby compelling plaintiff to allow the grapes to remain upon the vines for such period of time that in harvesting and cutting them from the vines the grapes dropped from the stems or bunches, and fell to the ground, occasioning the loss complained of.

The agreement, which is the subject of this litigation, reads as follows:

"Turlock Dehydrating & Packing Co.,

"Grape and Fruit Buying Contract.

"No. 2077.

"Turlock, Calif., Sept. 11, 1935.

"In consideration of $1.00, receipt of which is hereby acknowledged, I have this day sold to Turlock Dehydrating &

Packing Co., Inc., and Turlock Dehydrating & Packing Co., Inc., has bought my entire crop of Thompson Seedless grapes for the season of 1935, grown on Old Hansan Ranch, situated S. of Planada, as follows: 80 acres of Thompson Variety, estimated at 600 tons; Price $12.00; delivered to roadside. . . . Remarks: About 200 tons Girdel; if market advance, seller can sell for more; shall divide profit. Grower to pick fruit starting on or about Oct. 1, 1935, and thereafter at such times and in such quantities as buyer directs.

"Quality of above contracted fruits shall be of such quality to make extra choice raisin, buyer having the option to reject such fruit as does not come up to such standards. Grapes must test 22% sugar or better and be free from mildew and measles. Boxes to be furnished by buyers. Grower to be paid at buyers' office at Turlock, ten days after completion of deliveries—on the 1st, 10th, or 20th day of the month. Seller hereby guarantees said fruit to be his sole and absolute property, free from all encumbrances, except: Merced Corp. Production Ass'n.

"TURLOCK DEHYDRATING & PACKING CO., INC.

"By S. KNUTSEN.

"PAUL YEREMIAN, Grower, Tioga Hotel, Merced, Address."

Thereafter, by mutual agreement of the parties, the date for the commencement of picking the grapes was advanced from October 1, 1935, to September 23, 1935, for the reason that temperature conditions were such as to cause the grapes to ripen earlier than originally contemplated. Picking operations commenced on or about September 23, 1935, and continued to October 13, 1935, when they were completed.

Evidence was introduced, and the court found, to the effect that Thompson grapes require picking and should be harvested when a sugar content of 22 per cent is reached, and unless picked within ten days to two weeks thereafter, the sugar content will have increased to the extent that when it is attempted to cut the bunches from the vines, the grapes will drop off, fall to the ground, and be lost.

There was evidence of numerous (written as well as oral) demands by plaintiff for additional boxes, during the picking of the crop.

■ Appellant attacks the findings and judgment as not supported by the evidence, and among the several assignments of error it is urged that the agreement of sale fixes the time

and manner of delivery, and could not be varied by parol or other testimony, and that consequently the defendant had the sole power to determine the rate of deliveries of the grapes, and that plaintiff's complaint that boxes in sufficient quantities were not supplied is of no avail.

It will be observed that by the agreement the defendant purchased plaintiff's entire crop of Thompson grapes. The evidence discloses that the plaintiff, as well as the officers of the defendant corporation, had been engaged in and were familiar with the grape growing industry for a number of years. The court found that defendant knew that good husbandry in grape culture and the harvesting of Thompson grapes, required that they be picked within such period of ten days to two weeks after they had ripened; that they reached a sugar content of 22 per cent, and also found such period to be a reasonable time within which Thompson grapes must be picked and harvested.

While the agreement contains the following language: "Grower to pick fruit starting on or about Oct. 1, 1935, and thereafter at such times and in such quantities as buyer directs," we are unable, considering the contract in its entirety, to interpret this provision as placing with the defendant the entire right to determine the time for picking, the quantities to be delivered, and the times when such quantities should be delivered, as contended by appellant.

The plaintiff having sold, and the defendant having purchased plaintiff's entire crop of Thompson Seedless grapes, evidence was properly received, not for the purpose of changing the terms of the written agreement, but for the purpose of reconciling, if possible, the provision vesting in the defendant the asserted right of exclusively determining the rate of delivery of such grapes, with the right of the plaintiff to have his entire crop delivered at a time, and in a manner which would, in the ordinary practice of good husbandry, return to plaintiff his selling price, based upon the harvest of the crop, within a period of time that would permit the harvesting of the greatest quantity of grapes. (*Alvernaz* v. *H. P. Garin Co.*, 127 Cal. App. 681, [16 Pac. (2d) 683].)

The Alvernaz case, *supra*, is in many respects similar to the instant case. Therein, the plaintiff, as seller, sold to the defendant, as buyer, a crop of green and ripe tomatoes grown upon a certain 30-acre tract of land, one of the provisions of the contract being as follows: "The time of harvesting said

crop both commencing and ending shall be entirely up to the shipper (buyer), and he will at all times have his agents and representatives keep. in close touch with the grower (seller), so as to post him as to growing, picking, and delivery of the same.''

The evidence disclosed that the defendant (buyer) notified the plaintiff (seller) in early August that no more ripe tomatoes would be received, and between November 10th and 15th the defendant refused to accept deliveries, notifying plaintiff in substance by letter on November 17th, that no more tomatoes would be received. It was shown on these dates there remained between 75 and 100 tons unpicked, and that they were undamaged by frost. The defendant contended, as the appellant does here, that it (buyer) had the right to determine when the season should begin and when it should end. In disposing of this contention the court stated: ''According to defendant's interpretation of the contract the provision therein that 'the time of harvesting said crop, both commencing and ending, shall be entirely up to the shipper . . . ', gave the right to the shipper to determine when the season should begin and end. We cannot agree with this view. The provision should be read in connection with the remainder of the clause and the succeeding paragraph, the clear intention being to allow the shipper to advise the grower when as a matter of good husbandry the crop should be picked and delivered, but not to give the shipper the right to arbitrarily refuse deliveries which met the requirements of the contract.

''A contract must receive such interpretation as will make it reasonable. (Civ. Code, sec. 1643; 6 Cal. Jur., Contracts, sec. 269, p. 271.) Here, the interpretation urged by defendant would render the contract unreasonable and unfair, and its language does not require such interpretation.''

It is thus apparent that the contract here under consideration should receive a reasonable interpretation and not one which would give the buyer the right to arbitrarily refuse delivery of grapes which met the standard requirements of the contract, by failing to supply boxes in sufficient number to permit the crop to be harvested within a reasonable time. Appellant argues that if a reasonable rate of delivery is the test, then the rate of delivery, as shown by the evidence, was reasonable, and the finding to the con-

trary is not supported. ■ It is then urged that the advance in the date to commence picking from October 1st to September 23d, was made solely as an accommodation to plaintiff (seller), and therefore, the defendant (buyer) should not be penalized for its cooperation. Whether or not the advance in the date was an accommodation, is of no consequence, for it was changed by mutual agreement by the parties, and presumably for their mutual benefit, for the reason, as we have heretofore mentioned, that the grapes were maturing or ripening earlier than expected, had reached the required 22 per cent sugar content at the advanced date. The defendant, therefore, knowing that Thompson grapes must be picked from ten days to two weeks after arriving at such sugar content, was bound to supply boxes in sufficient number to complete the harvest within such period of time.

■ Appellant further complains that there is no proof upon the part of plaintiff that the grapes that were lost were of the character or type specified in the contract. This does not appear to have been an issue in the pleadings, and if relied upon as a breach of warranty, the burden of proof rests with the party asserting it. (55 Cor. Jur., p. 837; *Waltz* v. *Silveria,* 25 Cal. App. 717 [145 Pac. 169]; *Cerruti Mercantile Co.* v. *Simi Land Co.,* 171 Cal. 254 [152 Pac. 727].)

On the other hand, there is evidence to support the court finding that the grapes were in all respects up to the standard required by the terms of the contract.

Our conclusion upon the main assignments of errors renders it unnecessary to discuss other alleged errors, as they could in no event affect the determination of the case. ■ There is competent evidence in the record to support the findings of the trial court, and we may not disturb them simply because of conflicts therein.

The judgment is affirmed.

Pullen P. J., and Thompson, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 16, 1939.