[Civ. No. 12200.   First Dist., Div. One.   Jan. 30, 1943.]

ICE BOWL, INC. (a Corporation), Appellant, v. SPALDING SALES CORPORATION (a Corporation), Respondent.

R. H. Schwab for Appellant.

McCutchen, Olney, Mannon & Greene for Respondent.

KNIGHT, J. — The plaintiff and cross-defendant, Ice Bowl, Inc., appeals from a judgment in favor of the defendant and cross-complainant, Spalding Sales Corporation, in an action involving the purchase by appellant from the respondent of 593 pairs of ice skates and shoe combinations at an agreed price of $3.95 a pair. Appellant's action was for damages for breach of warranty, and respondent's cross-complaint was for the recovery of the purchase price of the property sold and delivered. The cause was tried before the court sitting without a jury, and the court found generally against appellant and in favor of respondent. Judgment was entered accordingly; and the grounds of appeal, as they are stated by appellant in its opening brief, are that the trial court erred in failing to find on the issue raised by

paragraph III of the complaint, and that findings VI, VII, VIII and X are not supported by the evidence.

Resolving all conflicts in the testimony in favor of the prevailing party, the material facts may be stated as follows: In August, 1940, Roy Hann, representing appellant, called at respondent's store in Sacramento which was being conducted by Lloyd Toomey, and told Toomey the Ice Bowl wanted to buy some skates for its rink in San Jose, within the price range of $3.95, which was the wholesale price of the cheapest skates carried by Spalding. He stated also that he wanted the soft-toe type. Toomey ordered samples from the San Francisco warehouse, and upon the arrival of the samples Hann looked them over and took away at least one sample, priced at $3.95, saying that "they were going to look them over." The next day Hann returned, bringing with him a list showing the number and sizes of the skates the Ice Bowl already had on hand and the additional skates needed. At that time he told Toomey that they had decided on the soft-toe model priced at $3.95, for which Hann had previously expressed a preference. Toomey had recommended the hard-toe skate for rink use, and gave his reasons therefor, but rather than accept Toomey's recommendation appellant selected the soft-toe skate, and ordered 593 pairs, at the price of $3.95 a pair, payments to be made as follows: one-half on December 1, 1940, one-quarter on January 1, 1941, and one-quarter on February 1, 1941. The skates were delivered to and accepted by appellant in San Jose, and were thereafter used for rental purposes; in fact in November, 1941, which was shortly prior to the trial of this action, the skates were still being used for rental purposes. However, appellant failed to make any of the payments falling due on December 1, 1940, January 1, and February 1, 1941; and late in February, 1941, respondent began to press appellant for payment. In response to these demands appellant promised that payments would be made in March and April, 1941. Meanwhile the counters in some of the skates began breaking down, and a Mr. Mabrey, another representative of the appellant company, called and inquired whether anyone in San Francisco could strengthen the counters, saying that appellant "was willing to pay any charge to reinforce the counters." Respondent undertook to see what could be done, and it was subsequently found that the counters could be strengthened at a cost of 25 cents a pair to appellant; but appellant then decided not to have the work done. Up

to that time, according to respondent's evidence, no suggestion was ever made that respondent was in any way liable for the condition of the skates; and following these conversations appellant again promised to make payments on the purchase price of the skates, and also promised to pay the state sales tax of $70.33, which had been omitted on the invoice. At the end of April, 1941, respondent, having learned of other suits against appellant, threatened to sue for the purchase price of the skates; and immediately afterwards appellant filed its action for damages.

Apparently the complaint was drafted on the theory that there had been an express warranty, which had been breached; but at the trial appellant seems to have taken the position that there was a breach of an implied warranty as to the fitness of the skates for a special purpose (Subd. 1, § 1735, Civ. Code); and on this appeal the additional contention is made that there was a breach of an implied warranty of merchantability. (Subd. (c), § 1736, Civ. Code.)

It is our conclusion that appellant has not established a cause of action for damages under any of the foregoing theories. As stated, the cause of action pleaded in the complaint appears to be based on the theory of an express warranty, the material allegations in this behalf being "that there was a warranty that said skates were sufficiently strong and of the proper type to be used as rental skates." However, section 1769 of the Civil Code declares in part that ". . . if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor"; and here the trial court found that no such notice was given, and the evidence, although conflicting, supports the finding. In this connection the supporting evidence shows that following the delivery and acceptance of the skates no further transactions took place between the parties until the end of February, 1941, when respondent demanded that some payment on the purchase price be made; that thereafter and up to April, 1941, when suit to collect the delinquent payments was threatened, several conversations took place, but that in none of these conversations did appellant make any complaint that respondent was liable for the breaking down of the counters of the skates; that on the contrary, during that period, appellant repeatedly declared its intention and willingness to pay for the skates, and that

not until April, 1941, when appellant was threatened with suit, did appellant intimate that any such warranty had been made or breached. Therefore, applying the provisions of said section 1769 to the foregoing facts, it is apparent that appellant failed to establish a cause of action for breach of express warranty.

As stated, appellant's second theory, that there was a breach of an implied warranty, is based on subdivision 1 of section 1735 of the Civil Code, which provides: "Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows: (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose." As will be seen, in order to recover under those provisions it must be established not only that the buyer has made known to the seller the particular purpose for which the goods are required, but also that *the buyer has relied on the seller's skill or judgment;* and here the allegations of the complaint do not bring the case within the operation of the above italicized provisions, and there is an express adverse finding, supported by substantial evidence, to the effect that appellant did not rely on respondent's skill and judgment in selecting the soft-toe skate, and that the skate and shoe combinations purchased by appellant "were reasonably fit for use as rental skates for ice skating," which was the particular purpose for which they were required.

With respect to appellant's contention that it was entitled to recover under subdivision (c) of section 1736 of the Civil Code, the provisions of that section, so far as here pertinent, provide: "In the case of a contract to sell or a sale by sample: ... (c) If the seller is a dealer in goods of that kind, there is an implied warranty that the goods shall be free from any defect rendering them unmerchantable which would not be apparent on reasonable examination of the sample"; and the argument of appellant seems to be that the evidence established a breach of the implied warranty of merchantability. However, in order to invoke the provisions of that section it is essential for a buyer to allege

that the goods were unmerchantable, and in the present case there is an absence of such allegations; secondly, where such allegations are made, the burden is on the buyer to prove them (*Alvernaz* v. *H. P. Garin Co.*, 127 Cal.App. 681 [16 P.2d 683]; *Barrios* v. *Iwaki*, 32 Cal.App.2d 198 [89 P.2d 417]; *Kullman, Salz & Co.* v. *Sugar Apparatus Mfg. Co.*, 153 Cal. 725 [96 P. 369]); and here, although there was an absence of allegations invoking the provisions of said section, the trial court definitely found that the goods were merchantable, and the finding is supported by substantial evidence. The finding reads as follows: "That the aforesaid sale was a sale by sample. That said skate and shoe combinations purchased by plaintiff and cross-defendant were selected by plaintiff and cross-defendant from a sample. That each and every one of the 593 pairs of skate and shoe combinations delivered by defendant and cross-complainant to plaintiff and cross-defendant as aforesaid corresponded with the sample in quality and each and every one of said 593 pairs of skate and shoe combinations were free from any defect rendering them unmerchantable." (See finding VI.)

Paragraph III of the complaint, upon which the trial court made no finding, contained allegations to the effect that the skates were "purchased by plaintiff for the purpose of renting the same, for a fee, to patrons of plaintiff. . . ." However, the court specifically found, as above pointed out, that the skates "were reasonably fit for use as rental skates for ice skating"; consequently the failure to find on the allegation of paragraph III is unimportant.

Findings VII and VIII which appellant challenges upon the ground that they are wanting in evidentiary support are lengthy and cover practically all of the contested issues of fact raised by the complaint, the cross-complaint and the answers thereto; and the specific findings contained therein are based upon a great deal of conflicting evidence. The vital and determinative findings of fact embodied therein are those already discussed. It is unnecessary, therefore, to repeat what was there said. As to the remaining specific findings not already discussed, it is our opinion that they, too, are legally supported; and since they are based on evidence which is sharply conflicting it would serve no useful purpose to elaborate upon the evidence herein. Finding X which is also challenged merely negatives the allegation of paragraph VI of the complaint that as a result of said breach of said warranty appellant had been damaged in the

sum of $5,000; consequently finding X amounted to no more than a legal conclusion which is sustained by the other findings.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.