RAYMOND D. BRUNSCHER, Respondent, v. CHARLES REAGH et al., Defendants; THELMA BRUNSCHER, Appellant.

Charles Reagh for Appellant.

No appearance for Respondent.

PETERS, P. J.—Plaintiff, Raymond Brunscher, brought this action against Charles Reagh to partition certain property claimed by plaintiff to be jointly owned by plaintiff and Reagh, and for an accounting. Thelma Brunscher answered, claiming that she now owns the interest in the property formerly owned by Reagh, and also alleging that if an accounting be granted she be given credit for certain improvements to the property made by her, and for certain other specified items. Pursuant to court order the property was sold and the money received therefrom impounded. An accounting was then had. After all obligations against the property were paid the trial court found that there remained $2,750 to be distributed and that Raymond Brunscher should receive $838.79 and Thelma Brunscher should receive $1,911.21. Thelma Brunscher appeals, challenging the accounting. Reagh has not appealed. Raymond Brunscher has not filed a respondent's brief and his counsel has informed the court that Raymond does not desire to do so.

Where the respondent refuses to file a reply brief, under rule 17(b) of the Rules on Appeal "the court may accept as true the statement of facts in the appellant's opening brief and, unless the appellant requests oral argument, may submit the case for decision on the record and on the appellant's opening brief." In *Postin* v. *Griggs*, 66 Cal.App. 2d 147, 148 [151 P.2d 887], it was stated: "Under the provisions of that rule [17(b)] we are entitled to accept as true the statement of facts in the opening brief. We are under no duty to seek out points of law in support of the judgment, are entitled to assume that respondent has abandoned any attempt to support the judgment, and that the point made by appellant for reversal is meritorious."

In the instant case, it is apparent that the judgment appealed from must be reversed. The record shows that in 1933 Ray and Thelma Brunscher were husband and wife. They acquired the real property in question in that year. Title was taken as joint tenants, but they treated it as community property. A deed of trust was put on the property and payments

of $27.80 to $30.50 per month were made on it. The parties separated on June 10, 1946, and Raymond took possession of the property and lived there with their oldest child. There were two younger children who remained with Thelma. Thelma and her children spent some time with the Reagh family and then went to Nevada and secured a default divorce from Raymond on January 14, 1947. On February 21, 1947, Thelma deeded her interest in the property to Reagh as security for attorney's fees and money advanced by him. Reagh, by deed dated July 31, 1950, but not recorded until January 28, 1955, deeded the interest involved back to Thelma.

Raymond remained in possession of the property until January 1, 1948. On that date, while Raymond was employed out of town, a Joy Hammock moved in under a lease granted by Reagh. Raymond's personal belongings were moved out of the house and he was not permitted to re-enter the property. Hammock paid rent of $50 per month which was paid to Thelma until September 2, 1953, when Hammock vacated the premises. Thelma then moved into the house with her two children and occupied the premises until June 29, 1956.

Raymond paid the installments on the deed of trust while he occupied the property. After January 1, 1948, Thelma made these payments and as of June 29, 1956, had made payments totalling $2,835.60.

On some date not here important Raymond deeded his interest in the property to one Gordon Hicks, a stepson, and Raymond's interest remained in Hicks until the property was sold pursuant to court order. Raymond purchased the property at the public sale for $6,200, less his one-half interest.

In the accounting the trial court charged Thelma with rent at $50 per month from January 1, 1948, to September 1, 1953, a total of $3,400, while Hammock was in possession, and also rent at $50 a month from September 1, 1953, to June 29, 1956, a total of $1,696.67, the period that Thelma occupied the premises. These two items are challenged by Thelma on this appeal.

█ It is the general rule that each tenant in common has a right to occupy the common property, and, generally speaking, one such tenant cannot recover rent from the other tenant. (*McWhorter* v. *McWhorter*, 99 Cal.App. 293 [278 P. 454]; *Nevarov* v. *Nevarov*, 117 Cal.App.2d 581 [256 P.2d 330].) But this rule does not apply where one cotenant wrongfully ousts the other and prevents him from enjoying joint possession. █ In such event, the wrongfully ousted cotenant

may recover the damages resulting from the ouster, which ordinarily are his share of the value of the use and occupation of the land during the period of the ouster. (*Zaslow* v. *Kroenert*, 29 Cal.2d 541 [176 P.2d 1].)

In the present case there is evidence that Raymond was wrongfully ousted from the premises on January 1, 1948, when Hammock took possession and Raymond's possessions were moved out of the house and Raymond was denied permission to enter. Hammock remained in possession until September 2, 1953. Then Thelma moved in and occupied the premises until June 29, 1956. But there is no evidence that Raymond was denied entry after Thelma had taken possession. Defendant testified that Raymond never demanded possession of the property from her.

Moreover, it appears in the record that in October of 1949 an action was filed against Raymond by Thelma in the Municipal Court of San Francisco to recover doctors' bills incurred by her for one of their children. In a verified answer Raymond averred that the parties own the property in question "and that in order to provide for the support of said minor child this defendant has allowed the mother of said child to collect all of the rents from said community property to be used as and for the support of said minor child."

█ If these allegations are binding on Raymond, a point not passed on by the trial court in the instant case, it would appear that at the time they were made (October of 1949) the occupation of Thelma through Hammock was permissive. If such is the true fact, Raymond is entitled to no damages from the time such agreement was made, because the possession would then be permissive and there is no evidence of any subsequent ouster.

In view of the fact that the judgment must be reversed something should be said about the measure of damages.

█ A wrongfully ousted cotenant is allowed to recover damages equal to his share of the value of the use or of the rental value during the period of the ouster. During both the periods here involved, assuming there was an ouster, recovery would be limited to Raymond's share of the rental value, that is, to one-half of the rents, not all of the rents.

The judgment must be reversed because, while there is sufficient evidence to show a wrongful ouster of Raymond on January 1, 1948, there is insufficient evidence to show that the ouster was permanent or for how long it was effective. This is

particularly true because of the allegations of Raymond in the municipal court action to the effect that since October, 1949, the occupancy of Thelma and her collection of rents have been permissive. The case must be remanded to the trial court for a determination of whether the ouster of January 1, 1948, was temporary or permanent, and, if temporary, when it terminated. The damages to Raymond caused by the ouster should be recomputed accordingly and in accordance with the views herein expressed.

The judgment appealed from is reversed.

Bray, J., and St. Clair, J. pro tem.,* concurred.

[Civ. No. 22844. Second Dist., Div. One. Oct. 15, 1958.]

*Assigned by Chairman of Judicial Council.