[Civ. No. 27889.   Second Dist., Div. Three.   Sept. 8, 1965.]

THE CARPENTER STEEL COMPANY, Plaintiff and Respondent, v. LEE L. PELLEGRIN, Defendant and Appellant.

A. P. Coviello for Defendant and Appellant.

Marvin Levin for Plaintiff and Respondent.

ASHBURN, J.†—This controversy revolves around alleged breach of express and implied warranties claimed to have been made by the plaintiff manufacturer upon sale to defendant of certain steel wire to be fabricated for him. Defendant gave to plaintiff a postdated check for the purchase price, same was dishonored and this action was brought by Carpenter Steel Company, the seller, to recover upon the check. The

†Retired Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

buyer, Pellegrin, by way of recoupment and cross-complaint for damages relied upon express and implied warranty. After a nonjury trial the court found for plaintiff and awarded judgment for the amount of the check, $9,712.80 plus interest and costs. Pellegrin in his individual name and "dba PACIFIC WELDING ALLOYS MANUFACTURING Co., and as MIR-O-COL ALLOYS Co." appeals.

At the beginning of the trial it was stipulated that the check was executed and not paid and that that instrument and the bank's memo that same was dishonored for want of sufficient funds, notice of dishonor and protest should be received in evidence. The written order for the steel was also received as Exhibit 4. Dated April 7, 1961, it called for 16,000 pounds of Approx. H Y 80-Wire" and then specified a chemical analysis as set forth in the footnote.[1]

Mr. Pellegrin was the only person who testified. He was reselling this material to American Equipment & Supply Co., a jobber, who was reselling to the Navy. He said that plaintiff's representatives were told at the time the order was made out that this wire was "going into an atomic submarine, into a use for that purpose, and it meant considerable future business *if this were the right specification.*" (Italics ours.)

The phrase we have emphasized rules out any implied warranty for this was a sale of goods to be made pursuant to specific specifications. Section 1735 Civil Code, so far as applicable says: "Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows: (1) Where the buyer, expressly or by im-

---

[1]"CHEMICAL ANALYSIS AS:

| C | .08 | MAX |
|---|---|---|
| MG | 1.15 | 1.55 |
| S1 | .35 | .65 |
| PH | .025 | MAX |
| SU | .025 | MAX |
| N1 | 1.15 | 1.55 |
| MO | .30 | .60 |
| VA | .10 | .20 |

H. R. Weld
1/4" ROUND *((HOT ROLLED ANNEALED)) AND PICKLED IN COILS."

We are not sure the word we have interpreted as "weld" is indeed such, but the evidence makes us think so. Mr. Pellegrin testified that: "We call it welding wire."

*Matter in double parentheses strike out type in copy.

plication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. . . ." It here appears that the buyer was relying upon his own judgment as to whether the specifications furnished by him would satisfy the ultimate buyer, the Navy.

On this general subject 43 California Jurisprudence, Second Edition, section 124, page 260, says: "Where a known, described, and defined article is ordered of a seller, to be of the seller's own manufacture, if it is actually supplied there is no warranty that it will answer the particular purpose intended by the buyer, though the order may have stated that the article was required by the buyer for a particular purpose. Similarly, where a machine or appliance is made according to plans and specifications, there is no implied assurance or warranty that it is adequate for the buyer's purpose, or even for the general purpose for which such things are designed. If the article corresponds with the plans and specifications, the manufacturer cannot be held liable, and this rule is not changed by the fact that the plans may have been supplied by the seller. The buyer is deemed to have acted on his own knowledge and judgment, and not to have relied on the superior knowledge or judgment of the seller." (See also *Bancroft* v. *San Francisco Tool Co.*, 120 Cal. 228, 233 [52 P. 496]; 46 Am.Jur. section 352, at page 538.) 8 UCLA Law Review, at page 298: "Furthermore, the buyer must actually rely on the seller's skill or judgment. If he furnishes technical plans or specifications, or otherwise bypasses the seller, the buyer cannot claim to have 'relied'."

█ Though there was no implied warranty, we do have an express one, for defendant further testified: "Well, the only discussion I think we did have was the fact that they [Carpenter Steel Company] could make it and they could comply to specifications. . . . That they could make the product and they would comply with the specifications." This is enough to constitute an express warranty of conformity to defendant's specifications. (*Roberts Distributing Co.* v. *Kaye-Halbert Corp.*, 126 Cal.App.2d 664, 668 [272 P.2d 886].) So the controlling question of the trial became whether the steel wire did or did not conform to the specifications of defendant as set forth in the purchase order.

█ After plaintiff had proved the making and non-

payment of defendant's check and the protest thereon, plaintiff rested. The question of burden of proof immediately arose and defendant's counsel insisted throughout the trial that the burden rested upon plaintiff to prove that there was no breach of its warranty and that, not having done so, it could not prevail. But defense counsel nevertheless undertook to prove the breach—thus assumed the burden of going forward—and failed to establish it. This presents a real question[2] of who had the burden of ultimate persuasion,—not that of going forward with the evidence for defendant had opened the question upon his defense and without objection to doing so. Appellant's present contention is that defendant was the sole witness, hence his testimony could not be rejected, and it showed that the steel as delivered by plaintiff did not conform to the specifications of the purchase order; that respondent cannot be heard to contend that appellant did not successfully carry the burden of proof which rested, in fact, upon respondent.

The fact that appellant was the only witness does not command acceptance of his testimony, wholly or in part, unless the trial judge arbitrarily rejected it. (*People* v. *Matlock*, 51 Cal.2d 682, 695 [336 P.2d 505] ; *People* v. *Finley*, 219 Cal.App.2d 330, 338 [33 Cal.Rptr. 31]; *Curtis* v. *Mendenhall*, 208 Cal.App.2d 834, 840 [25 Cal.Rptr. 627].) In the last cited case the court remarked that ''A witness may be contradicted by the facts he states as completely as by direct adverse testimony, and there may be so many omissions in his account of particular transactions or of his own conduct to discredit his whole story. . . . [Citations.]''

The testimony of this appellant upon the crucial issue of conformity of the steel with the specifications furnished by him consisted almost entirely of hearsay and conclusions, which, though received in most instances without objection, should be and were appraised by the trial judge and given such credence and weight as they were actually entitled to receive. ''True, hearsay received without objection may be considered on appeal in support of a finding (19 Cal.Jur.2d § 389, p. 123) ; this is the form in which

---

[2]Respondent's counsel has not rendered to the court the assistance he should have afforded it, has expressly declined to file a respondent's brief. Instead of treating this as an admission of error (*Brunscher* v. *Reagh*, 164 Cal.App.2d 174, 175 [330 P.2d 396]; *Sowell* v. *Sowell*, 164 Cal.App. 2d 371, 373 [330 P.2d 391], we have expended the necessary labor to determine where the burden of proof rested in this case and whether it was borne by appellant.

the rule is generally stated but actually it goes further. Such evidence when so received is to be considered like any other and given such weight as it inherently is entitled to have. 20 Am.Jur. § 452, pp. 401-402: 'In fact, the general rule to which only a small minority of jurisdictions take exception is that hearsay testimony admitted without objection may properly be considered and given its natural probative effect. . . . Of course, the weight of hearsay evidence is minimized by the same inherent weaknesses which are grounds for its exclusion when proper objection is made.' (See also 20 Am. Jur. § 1185, p. 1036, and anno. in 104 A.L.R. 1130.) This view of the matter was expressed by this court in *Duff* v. *Schaefer Ambulance Service, Inc.,* 132 Cal.App.2d 655, 669 [283 P.2d 91], where it is said: '[T]hat uncorroborated testimony as to an oral declaration of a deceased person is the weakest form of evidence and is open to suspicion; but, where admissible, it will be weighed by the trier of facts the same as other evidence and may be disregarded where shown to be unconvincing or insubstantial. (*Estate of Emerson,* 175 Cal. 724, 727 [167 P. 149].)' To the same effect is *County Nat. Bank & Trust Co.* v. *Sheppard,* 136 Cal.App.2d 205, 222 [288 P.2d 880]." (*Estate of Moore,* 143 Cal.App.2d 64, 74 [300 P.2d 110].)

The court's remarks are enlightening: "Now, if you have some competent evidence that would tend to establish that the wire didn't conform either to the express terms of the order as set forth in the purchase order, or that it didn't comply with an express or implied warranty, I think we have got to hear it." Also: "Well, the only direct evidence that is before me is that the Navy evidentally [*sic*] rejected it. But whether the Navy's specifications were higher than what was on the purchase order, and whether they varied differently, or whether they were the same thing, I don't know. And further, there is no direct evidence as to why the Navy rejected it. All that we have is the testimony of the defendant, which is really not sufficient by way of foundation, that he was present when tests were made, but he was told that they did not pass the test. The testimony is rather vague as to that point. It certainly is possible that the wire did not meet the requirements that were set forth in the purchase order, or that it didn't meet the requirements of some sort of warranty. That hasn't been established."

The defendant testified on cross-examination: "Q. Do you know whether or not the metal that was welded was in fact

HY-80 wire? A. Yes, sir. Q. I mean the metal that was welded was in fact HY-80 metal, the metal plate? A. The metal plate—it was in accord with the specifications. It is a different specification that is very close to the HY-80 analysis.''

It follows that the ruling of the judge that appellant had failed to prove breach of the warranty must be sustained unless it be found that plaintiff had the burden of ultimate proof and must be denied recovery because it made no attempt to sustain it.

The general rule is stated in 43 California Jurisprudence, Second Edition, section 279, page 397: ''In an action for breach of a warranty, the burden is on the buyer to show by a preponderance of evidence that the seller breached the warranties under which his goods were sold.'' (See also *Vaccarezza* v. *Sanguinetti*, 71 Cal.App.2d 687, 690 [163 P.2d 470]; *Hill* v. *Matthews Paint Co.*, 149 Cal.App.2d 714, 722 [308 P.2d 865]; *Cerruti Mercantile Co.* v. *Simi Land Co.*, 171 Cal. 254, 256 [152 P. 727]; *Dougherty* v. *Lee*, 74 Cal.App.2d 132, 135 [168 P.2d 54]; *Yeremian* v. *Turlock etc. Co., Inc.*, 30 Cal.App.2d 92, 97 [85 P.2d 515]; *Ice Bowl, Inc.* v. *Spalding Sales Corp.*, 56 Cal.App.2d 918, 923 [133 P.2d 846]; *Consolidated Pipe Co.* v. *Gunn*, 140 Cal.App. 412, 417 [35 P.2d 350]; *Alvernaz* v. *H. P. Garin Co.*, 127 Cal.App. 681, 688 [16 P.2d 683]; *Rexall Drug Co.* v. *Nihill* (9 C.A.) 276 F.2d 637, 643; 77 C.J.S. § 365, p. 1283.)

Disregarding all of the foregoing authorities, counsel for appellant assumes that this was a sale by sample and relies upon an inaccurate quotation from ''section 237A'' of Williston on Sales (probably the First Edition). Clearly this was not a sale by sample for there was no sample involved in the sale to appellant, none used at all until after delivery of the goods when he submitted samples to certain firms for purpose of analysis (see 46 Am.Jur. § 369, p. 551).

The portion of Williston on Sales upon which appellant relies (correctly quoted from the Second Edition) is section 255 at page 514, where it is said: ''If the seller contracts to deliver goods like a sample, and the buyer refuses them, he cannot recover upon the contract without showing that the buyer is in default in refusing the goods, and this cannot be shown without proof that the goods correspond to the sample. The burden of proof, therefore, is upon the seller to establish that fact.'' The said section further says (as does section 255 of the later Revised Edition) : ''If the buyer accepts delivery of the goods except for the mere purpose of inspection, he

thereupon becomes liable for the price. Any right that he may have to refuse to pay the price in whole or in part, whether given effect to by recoupment or otherwise, is in its nature a cross right on the part of the buyer. He, therefore, in such a case has the burden of establishing that the goods are not equal to sample if the existence of his cross right depends upon that fact.''

The case of *Reininger* v. *Eldon Mfg. Co.*, 114 Cal.App.2d 240 [250 P.2d 4], and other cases cited by appellant in this connection are not in point.

True it is that the courts tend to place the burden of proof upon the party who is actually or presumptively in possession of information enabling him the more easily to sustain the burden. (31A C.J.S. § 113, p. 190.) Assuming that that view should prevail here, it would leave the onus upon appellant.

Plaintiff, who had manufactured the wire, maintained that it conformed to the specifications and that the chromium of which appellant complained was just a ''residual alloy.'' Asked what this meant appellant said: ''A. Well, it's claimed that there is always contamination or impurities in all metals.'' Also: ''Q. Now, what did the plaintiff reply or tell you concerning your complaints? A. The reply was they would not accept it as a fact. They claimed it was elements—they called it residual elements that are in the material which they allow for but this is beyond the point of tolerance.'' Plaintiff never made or had an analysis made of the material which had been delivered to defendant. He, on the other hand, witnessed a test at the Naval Ship Yard, ran a ''local test'' himself, and sent the wire out for analysis—''had three labs working''—including California Testing Labs and Keldon Research. Reports of these analyses were not produced in court by defendant nor any competent evidence of their contents given. Appellant was in possession of the wire at all times from delivery until trial of the action and thus in position to have as many tests made as might seem advisable but he quit with several that did not agree with each other. In these circumstances it would not seem equitable to impose the burden of proof upon the plaintiff.

We hold that the burden of proof rested upon appellant and that he failed to sustain it. Though his evidence was incompetent and recognized by the trial judge as such, his claims defeat themselves.

The purchase order calls for HY-80 wire, which

plaintiff characterized as a military specification; he said that the Navy rejected the wire because it contained chromium (a residual element) but that he, Pellegrin, was not defending on the ground that the material contained residual or trace elements. His reliance was and is upon rejection of the material by the Navy, a third party not entitled to the benefit of the warranty in question. (*Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682, 695 [268 P.2d 1041].) His effort to make this rejection sound basis for his claim of breach of the warranty of Exhibit 4, took the form of reliance upon analyses made for him and others after the wire was rejected. Unfortunately for appellant none of these analyses agreed with any of the others and if competently proved would not have advanced his cause to any extent whatever.

Judgment affirmed.

Shinn, P. J., and Kaus, J., concurred.