[L. A. No. 15624. In Bank.—June 30, 1936.]

HATTIE G. GOETTEN et al., Respondents, v. OWL DRUG COMPANY (a Corporation) et al., Appellants.

George L. Greer for Appellants.

Jesse H. Steinhart and John J. Goldberg, as *Amici Curiae* on Behalf of Appellants.

Mills, Hunter & Dunn, Paul J. Quigley and C. R. Liljestrom for Respondents.

THE COURT.—Upon further consideration, we are satisfied that the conclusion reached and the views expressed in the opinion of the District Court of Appeal, Second Appellate District, Division Two, written by Fricke, J., *pro tempore,* are correct and we therefore adopt that opinion as the decision of this court. It is as follows:

"Appeal by defendants Owl Drug Company and its manager, R. Thomasen, from an order granting a motion for new trial.

"On November 18, 1933, respondent Hattie G. Goetten and her husband, John P. Goetten, went into appellants' place of business and ordered some chow mein at the lunch counter. In eating the same she noticed what seemed to be

sand, and near the conclusion of the meal she choked and discovered and removed from her mouth a piece of broken glass about a quarter of an inch wide and somewhat longer. She at the same time swallowed a similar piece of glass and her mouth and throat were cut by the broken glass. There was evidence that the glass splinter removed from her mouth was green in color and appeared to be the same kind of glass as that of which the water glasses and other glassware used by appellants was made. The incident was immediately reported to the manager of the store and he in turn questioned the waiter, who informed him that there was glass in the food. In addition to the cuts in her throat and mouth, Mrs. Goetten suffered pains in her abdomen and nausea, was under medical care for a number of months, lost weight and otherwise suffered ill health, while prior to the incident she had enjoyed good health. The foregoing facts do not appear to be controverted, with the exception that appellants in their brief assert that 'Hattie Goetten never suffered any ill effects due to glass being swallowed'. The latter statement is made in connection with a statement that her condition, other than the cuts in her mouth and throat, was produced not as a proximate result of swallowing any broken glass but was the result of a mental obsession, not supported by the facts, that she had swallowed and retained in her system a quantity of broken glass. It was stipulated, however, that she was not malingering. The medical bills and expenses were stipulated to be in the amount of $1,160.

''It appears from the uncontradicted evidence that the chow mein served by appellants was purchased from an outside manufacturer, was delivered in cans and emptied into a container in the rear of the lunch counter of appellants at which all meals were served. Appellants did not include in the record a copy of the diagram of the lunch counter, but from the testimony of appellant Thomasen it appears that in addition to the steam table there were, back of and on each side of the counter, racks to hold glasses; that when dishes were washed they were taken to these racks, and that two out of the eight men employed back of the counter were engaged in washing dishes. The witness also testified that about twenty-five glasses were broken at the fountain during November, 1933, and that a piece of broken glass shown him resembled the glass used at the counter. There was a

lid provided for the steam table which was supposed to be kept in place except when food was being served, and if this lid was left off there was danger of broken glass or other foreign substance getting into the food.

■ "Appellants' basic contention is that no recovery can be had by respondents except upon proof of negligence on their part; that the facts did not warrant the conclusion that there was any negligence; that the furnishing of the food to respondents did not constitute a sale and that there was no implied warranty of the quality of the foods served.

"The case of *Loucks* v. *Morley*, 39 Cal. App. 570 [179 Pac. 529], relied upon by appellants, is not applicable here. The real question there was whether under section 1775 of the Civil Code (repealed in 1931) the serving of food by a restaurant keeper was a sale 'for domestic use', such sales carrying with them, under the section as it then read, a warranty of soundness and wholesomeness, and the decision is to the effect that such a transaction is not a sale for domestic use. It is worthy of note, however, that the two concurring justices refer to the furnishing by a restaurant keeper of food to a patron as a sale, and in the main opinion is cited the case of *San Francisco* v. *Larsen*, 165 Cal. 179 [131 Pac. 366], in which the court, while holding that a restaurant keeper was not, within the terms of a license tax ordinance, a person who 'sells or manufactures goods, wares or merchandise', also declared: 'It cannot be denied that the eating of food by a customer at a restaurant, in the regular course of business, involves a sale of the food eaten. The price of the food alone is usually not specified but it is included in a lump sum with the charge for service and use of dishes, chair and table. It is nevertheless a sale of the food consumed, within the technical definition of that term.' This conclusion is well supported by *Friend* v. *Childs Dining Hall Co.*, 231 Mass. 65 [120 N. E. 407, 5 A. L. R. 1100], and the cases therein cited and in the note thereto, as is also the conclusion that in such a sale there is an implied warranty that the food is wholesome and fit to eat. ■ In its effort to prove that no glass remained in Mrs. Goetten's system, X-ray examinations being negative, appellants offered in evidence tests made with glass particles from their glassware which showed a lead content sufficiently high to show up under the X-ray, evidence which could only be admissible under the

theory that the glass in the food eaten by Mrs. Goetten was of the same kind.

"Section 1735 of the Civil Code provides that there is no implied warranty as to quality or fitness of purpose of goods under a sale except 'where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose'. Ordinarily a patron at a lunch counter makes known, at least by implication, that he desires wholesome food; he relies upon the proprietor's skill and judgment to produce food which can be eaten without deleterious effect, and there is an implied warranty under the provisions of section 1735 that the food delivered is wholesome. A person who maintains a restaurant, or lunch counter holds himself out as one who has for sale food which, so far as it is under his control, is wholesome and free from foreign substances dangerous to the human system. Patrons of such food dispensers rely upon this implied representation, for without it they would not be patrons. While there exists the action for damages where negligence of the purveyors of food can be proven, this is not the only protection afforded to their customers.

"The application of the rule of implied warranty to cases such as that before us may impose a heavy burden upon the keepers of restaurants and lunch counters, but considerations of public policy and public health and safety are of such importance as to demand that such an obligation be imposed. As between the patron, who has no means of determining whether the food served is safe for human consumption, and the seller, who has the opportunity of determining its fitness, the burden properly rests with the seller, who could have so cared for the food as to have made the injury to the customer impossible. The most recent decision in this state applicable to the question is *Gindraux* v. *Maurice Mercantile Co.*, 4 Cal. (2d) 206 [47 Pac. (2d) 708], in which it appeared that defendant had purchased some salami in a sealed package from the producer, a large packing company, and in the ordinary course of trade sliced the end off the whole of an original package of salami and sold it to the

plaintiffs for human consumption. Plaintiffs brought the action for damages suffered as the result of eating the salami, which proof showed was infected with trichinae. The court there says: 'The defendant therefore knew by implication the particular purpose for which the salami was required. From that fact there arose an implied warranty that the commodity was reasonably fit for such purpose.'

■ ''The case at bar was submitted to the jury under the legal theory, declared in the instructions, that unless it appeared from a preponderance of the evidence that the glass was allowed or permitted to get into the food through the negligence of the defendants, appellants here, the jury should return a verdict for the defendants. This error in excluding from the consideration of the jury the question of implied warranty—a warranty which existed regardless of whether the glass entered the food before or after it came into appellants' possession—amply justified the trial court in granting a new trial. As said in *Gindraux* v. *Maurice Mercantile Co.*, *supra*: 'If it were a ''sealed package'' case it would still be within the rule of warranty of fitness and merchantability.'

''Appellants suggest that the order granting a new trial be reversed because respondent Mrs. Goetten suffered no damage. The point is obviously without merit.''

The order of the trial court granting a new trial is affirmed.