[L. A. No. 20358.   In Bank.   May 6, 1948.]

CLAUDE JENKINS WHITFIELD et al., Appellants, v. ROGER JESSUP et al., Respondents.

Samuel A. Rosenthal for Appellants.

Reed & Kirtland and Henry E. Kappler for Respondents.

CARTER, J.—Plaintiffs appeal from a judgment entered on an order granting a nonsuit, on the ground that they had failed to give notice to defendants, sellers of raw cream, of a breach of warranty in an action for damages for breach of the warranty.

Defendants are engaged in the business of selling dairy products, including raw cream, to the public for human consumption. During January and March, 1944, defendants sold and plaintiffs purchased for immediate consumption raw cream in containers. Plaintiff, Dorothy Whitfield, consumed the cream in her home, and for the purposes of this decision, it is not disputed that as a result thereof she contracted undulant fever. She commenced to have sensations of tiredness, chilliness, and headaches during the latter part of March and the first of April, 1944. She consulted a doctor on May 9, 1944, who diagnosed her ailment as "flu." She was confined to bed for some time. She remained away from work until October 2, 1944. The doctor called again the second week after the first call and made several other calls in May continuing to refer to the indisposition as "flu." A complete physical examination was given to her on May 31, 1944. On June 1, 1944, she became delirious and was taken to the hospital where she remained until the middle of June. She continued to suffer from the ailment being "up and down" as is typical of the disease.

On November 20, 1944, Mrs. Whitfield's attorney, Mr. Fainer, wrote a letter to defendants stating that his client "has retained me to press a claim against" you; and that "she [Mrs. Whitfield] tells me that her doctor advises her that she now has undulant fever as the result of using your dairy products.

"Before proceeding with this matter I would like to have your attorney get in touch with me in order that we may discuss the matter of an amicable settlement."

Plaintiffs' action was predicated on two counts, one on negligence and the other on breach of implied warranty of

the fitness of the cream. Pursuant to stipulation the negligence count was dismissed. The motion for nonsuit was on the ground that plaintiffs had not given defendants notice of the breach of the implied warranty as required by statute.

The statute provides: "In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. *But, if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."* [Emphasis added.] (Civ. Code, § 1769.) It is the italicized portion of the section which is here of concern. The rule stated by the section is the same as that stated in the American Law Institute's Restatement (Rest. Contracts, § 412) and probably the rule prevailing in California before the code section was added in 1931 (see, cases cited 22 Cal.Jur. 983-988). It is the identical language of the Uniform Sales Act (Uniform Laws Annotated, Sales, § 49). One of the purposes of the provision in the Uniform Sales Act was to ameliorate the harshness of the common law rule in some states that the mere acceptance by or passage of title to the buyer of the goods constituted a waiver of any and all remedies for breach of warranty, and at the same time to give the seller some protection against stale claims by requiring notice. (See, discussion, Williston on Contracts [rev. ed.], § 714.)

It is argued, however, that the notice required does not apply to goods sold for immediate human consumption as distinguished from the sale of other chattels, and reliance is placed upon *Kennedy* v. *Woolworth Co.,* 205 App.Div. 648 [200 N.Y.S. 121]. (See, also, *Silverstein* v. *R. H. Macy Co.,* 266 App.Div. 5 [40 N.Y.S.2d 916], refusing to apply it where the sale was of an article [gymnasium equipment] for immediate use.) The sales act on its face clearly applies to the sale of food or other articles for immediate human use or consumption. The reference throughout the statutory provisions on the law of sales is to the sale of "goods." In determining that there is an implied warranty that the food is fit for human consumption under the statutes dealing with the law of the sales of goods, it is accepted that the sale of food for immediate human consumption is a sale of goods under the stat-

ute. (See, *Klein* v. *Duchess Sandwich Co., Ltd.,* 14 Cal.2d 272 [93 P.2d 799] ; *Mix* v. *Ingersoll Candy Co.,* 6 Cal.2d 674 [59 P.2d 144] ; *Goetten* v. *Owl Drug Co.,* 6 Cal.2d 683 [59 P.2d 142] ; *Gindraux* v. *Maurice Mercantile Co.,* 4 Cal.2d 206 [47 P.2d 708] ; *Jensen* v. *Berris,* 31 Cal.App.2d 537 [88 P.2d 220].) In *Kennedy* v. *Woolworth Co., supra,* the court reasoned, in face of the clear language of the statute requiring notice, that the reason for the requirement of notice is not relevant to such a case: ''That section apparently has to do with the sales of goods whose inspection or use discloses a defect of quality, lack of conformance to sample, failure to comply with description, or other cognate circumstances, which causes money damage to the vendee. To require a complaint which, whatever its nomenclature of form, is really grounded on tortious elements, to indicate a notice of rejection or claim of damages within a reasonable time on account of defect of edible goods in a retail transaction, would strain the rule beyond a breaking point of sense or proportion to its intended object.'' (200 N.Y.S. 121, 122.) There is no intimation in the statute that it is confined to cases where an inspection would show a defect of quality. It is clear that in cases where the article is sold for immediate human consumption the defect will eventually be discovered. Otherwise there would be no controversy over a breach of warranty. When the discovery should be made and what constitutes a reasonable time in cases of this class may well be somewhat different from cases where the article is not for immediate consumption, because of the opportunity for inspection, yet that does not mean the statute should have no application. Provision is made that the point from which the reasonable time runs is when the buyer knows or should have known of the breach. Thus the rule is not unduly hard upon him, and in cases where the defect is not readily discoverable, or an inspection is not feasible (such as in the case at bar where the food is for immediate consumption and the defect—the cause of undulant fever—is latent), we have factors bearing significantly upon when discovery of the breach should be made and what constitutes a reasonable time. The intimation in the Kennedy case, *supra,* is that the statute should not apply because the action sounds in tort. That may be true of all cases of warranty which pose the much debated question of whether an action on a warranty is in tort or contract. The fact remains that the statute deals with a warranty such as

we have here whether an action thereon be said to sound in tort or contract.

The courts in other jurisdictions have constantly refused to follow the Kennedy case and have held that the statute involved applies to warranties in the sale of goods for immediate consumption including food. (*Savage* v. *Alpha Lunch Co.*, 300 Mass. 520 [16 N.E. 38] ; *Johnson* v. *Kanavos*, 296 Mass. 373 [6 N.E.2d 434] ; *Schuler* v. *Union News Co.*, 295 Mass. 350 [4 N.E.2d 465] ; *Hazelton* v. *First Nat. Stores*, 88 N.H. 409 [190 A. 280] ; *Baum* v. *Murray*, 23 Wn.2d 890 [162 P.2d 801].)

It is not persuasive to the point of holding the statute inapplicable to sales of food for immediate consumption, that the reason for the notice is to afford the seller an opportunity to make good the defective article, and that cannot be done where it has been consumed. It is doubtful that the seller has any such right. (See, Civ. Code, § 1789, dealing with remedies of the buyer in case of breach of warranty.) But if that is a reason for the notice requirement it is not the only reason. As stated in *Columbia Axle Co.* v. *American Automobile Ins. Co.*, 63 F.2d 206, at page 207 : ''While it may be one purpose of the notice required by the statute to permit the seller to make inspection of the goods, whether in the hands of the vendee or not, it is certainly not its only purpose. 'The purpose of the notice,' said Judge Learned Hand, 'is to advise the seller that he must meet a claim for damages, as to which, rightly or wrongly, the law requires that he shall have early warning.' *American Manufacturing Co.* v. *United States Shipping Board, etc.*, 7 F.2d 565 (C.C.A. 2) ; cf. *Truslow & Fulle, Inc.* v. *Diamond Bottling Co.*, *supra* [112 Conn. 181 (151 A. 492, 71 A.L.R. 1142)].'' (See to the same effect as to the general purpose for the requirement, cases collected, Uniform Laws Annotated, vol. 1, p. 289, and Supp. p. 204.)

There can be no doubt that the notice here given was sufficient in form and content. The letter was from plaintiffs' counsel which in itself indicated that a claim was being made and it advised defendants that a claim was being made for the disease contracted by use of defendants' dairy products sold to plaintiffs by defendants. No particular form of notice is required. It need merely apprize the seller that the buyer intends to look to him for damages. (See, *Hazelton* v. *First Nat. Stores, supra; Johnson* v. *Kanavos, supra; Ace Engineer-*

*ing Co.* v. *West Bend Malting Co.*, 244 Wis. 91 [11 N.W.2d 627]; *Baum* v. *Murray, supra.*)

█ The trial court was not justified in concluding as a matter of law that the notice was not given within a reasonable time. The purchases of the raw cream from defendants occurred during January, February and March preceding the month (November) the notice was given. The latter part of March and during April Mrs. Whitfield commenced to feel symptoms of the disease (she did not know that they were such) such as headaches and feeling of tiredness and weakness. She consulted a doctor on May 9th. During April she was too ill to even "bother" with cream. The doctor diagnosed her ailment as "flu." She remained away from work until the early part of October. All during May she was seriously incapacitated and the doctor continued to call on her diagnosing her trouble as "flu." During the first two weeks in June she was confined in a hospital. It appears the disease was diagnosed as undulant fever about June 2d. After the two weeks in the hospital Mrs. Whitfield was confined to her bed at home. She was able to be up a few days in July but was finally forced to return to the hospital for two weeks following July 16th. After returning to her home she was confined to bed. There conditions of being up and down continued during August. She was able to be out of bed during September. She had never before heard of the disease, undulant fever.

Having in mind the appropriate rule under this provision of the law of sales, that "It may be taken as axiomatic that what constitutes a reasonable time must be determined from the particular circumstances in the individual case" (*Columbia Axle Co.* v. *American Automobile Ins. Co., supra,* p. 208), this court cannot say as a matter of law that an unreasonable time had elapsed. Certainly the time did not commence to run before Mrs. Whitfield knew the disease was undulant fever. She had never before heard of the disease and it does not appear that she was advised that it may be caused by bacillus in raw cream. Perhaps she did not discover that until she had a complete physical examination in November and consulted her counsel. It is not to be supposed that she would inspect the cream—have it analyzed by a laboratory before it was consumed. The defect is latent and it is reasonable to infer that the only way discovery of it might occur would be through the effects on her body and a phy-

sician's advice in respect to such effects. She would not then know the source of her illness until she had been advised of it. Be reason of her illness she may not have been in a position to form an intelligent conclusion and be sufficiently alert to protect her rights. What constitutes a reasonable time where the goods sold are foods containing latent defects, which are immediately consumed, presents a different question than does the ordinary sale where the article is subject to examination and use which will reveal its defect. For all these reasons little light is shed upon the issue by an examination of the cases deciding that certain periods of time were or were not reasonable. The case must be controlled by its special circumstances.

The judgment is reversed.

Gibson, C. J., Shenk, J., and Traynor, J., concurred.

SCHAUER, J.—I agree with Mr. Justice Carter that "what constitutes a reasonable time [within the purview of Civil Code section 1769] must be determined from the particular circumstances in the individual case," but I do not agree with him that "Certainly the time did not commence to run before Mrs. Whitfield knew the disease was undulant fever," etc.

It is my view that the "reasonable time" contemplated by section 1769 is not to be determined solely by consideration of the circumstances of the buyer but, rather, that the test relates to the circumstances as they surround and affect the seller, and possibly the public, as well as the buyer. Failure of the buyer to discover the defect promptly may be an element in the reasonableness of the time of notice but I do not subscribe to the implication, if any be intended, that it prevents, or even necessarily postpones, the lapse of the full period beyond which it would be unreasonable, when the public interest, if any, and the seller's interests are considered, to permit the notice as a basis for action.

I think the case here is a close one, on nonsuit, but in the light of the authorities cited in the opinion of the District Court of Appeal (183 P.2d 133), of the nature of the article sold and of the importance to the public as well as to the defendant of prompt notice as to a defect such as that claimed here, I am not persuaded that the conclusion of the trial judge that the issue is one of law, is unreasonable.

Accordingly I would affirm the judgment.

SPENCE, J.—I dissent.

The questions presented on this appeal were thoroughly considered and, in my opinion, were correctly decided by the District Court of Appeal when this case came before it. (*Whitfield* v. *Jessup*, 81 A.C.A. 52 [183 P.2d 133].) As shown by the opinion of that court, no notice was given by plaintiffs to defendants until almost 11 months after the purchase of the first raw cream, until over seven months after plaintiff, Dorothy Whitfield, experienced her first symptoms of illness, or until five months and 18 days after plaintiffs had been advised of the nature of such illness. Under these circumstances, the authorities cited by the District Court of Appeal show that the trial court properly granted the nonsuit since it appeared, as a matter of law, from the uncontradicted evidence that plaintiffs had failed to give the required notice "within a reasonable time." (Civ. Code, § 1769.) I am therefore of the opinion that the judgment should be affirmed.

Edmonds, J., concurred.

Respondents' petition for a rehearing was denied June 3, 1948. Schauer, J., and Spence, J., voted for a rehearing.