[Civ. No. 19017.   Second Dist., Div. Three.   Nov. 17, 1952.]

CARL REININGER et al., Respondents, v. ELDON MANU-
FACTURING COMPANY, Appellant.

Loeb & Loeb and Alfred I. Rothman for Appellant.

Lester V. Peterman and Charles P. Lester for Respondents.

SHINN, P. J.—This is an action brought by sellers for the balance due on a sales contract. Contending the products delivered were of such poor quality as to be useless the buyer-defendant counterclaimed and also filed a cross-complaint seeking damages. Judgment was entered for plaintiffs for the balance due and against defendant on the cross-complaint. Defendant appeals.

The sole question presented on this appeal, which is on the judgment roll alone, is whether a buyer who keeps the goods delivered under a sales contract but promptly notifies the seller that goods delivered are defective may maintain an action for damages suffered because of the defective quality of the goods. The trial court found that the goods here in question were wholly defective and that the buyer so notified the seller, but concluded that the act of accepting the goods and exercising dominion over them by attempting to rework them precluded any claim of damage by the buyer. No question is here raised of the propriety of the judgment insofar as it awarded plaintiffs the amount of the balance of the contract price. The contention of appellant is that it should have been awarded damages. There is thus presented a clear question of the proper application of section 1769 of the Civil Code.[1]

The court found the following facts: On April 5, 1950, by written contract,[2] plaintiffs agreed to make two dies to be

[1] "In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

[2] "PURCHASE AGREEMENT

"To: Ability Products Co.,
2036 Lincoln
Pasadena, California

"1. Upon the terms and conditions herein contained, we agree to purchase from you the following described personal property.

"A. One (1) 4-cavity die to make covers of Styrene Box, as per drawings furnished.

"B. One (1) 4-cavity die to make bases of Styrene Box, as per drawings furnished.

"2. Contract price: $5,250.00.

"3. Terms of payment: $2,500.00 down; final payment after approval of samples and dies by Eldon.

"4. Delivery date: Die (A)—May 12, 1950
                   Die (B)—May 5, 1950

"5. Shipping instructions: Delivery by your truck at our plant.

"6. Subject to delay caused by fire, flood, strike or other causes be-

used in the manufacture of the base and cover of a Styrene box; at the time of the agreement plaintiffs were given drawings for the finished boxes; the next day defendant furnished a drawing of the proposed dies. The court found, however, that the contract was made on the basis of the box and cover drawings and not the die drawing and that the box and cover drawings were sufficient to enable a die maker to make dies from which the box could be made. Sales price for the dies was fixed at $5,250 with a proviso that if delivery were made on or before May 12, 1950, the price would be increased $100 per day of early delivery and if delivery was after May 12, 1950, the price would be decreased $150 for each day's delay. Defendant deposited $2,500 with the order. The two dies were successively delivered on May 4th and May 6th, 1950. Sample boxes were run from the dies and the samples were not in accordance with the drawings furnished and were unusable. Defendant immediately notified plaintiffs of the defects and returned the dies for correction. On May 9, 1950, the dies were redelivered and samples again were made. These also were defective and unusable and the dies were found to have a salvage value of only $100. The dies not only would not make the box and cover according to drawing but were not in conformance with the die drawings furnished by defendant. The inability to produce acceptable samples was due to defects in the dies. Plaintiffs contend the dies were good and there were no defects but the court found against plaintiffs on these issues, and upon a judgment roll appeal these findings are conclusive.

The court found further that notice in writing was given by defendant to plaintiffs on May 10, 1950, specifying that both the dies and samples made therefrom were not in accordance with the contract, that defendant would send the dies elsewhere for necessary correction and would hold plain-

---

yond our control, we shall be entitled to the sum of $150.00 for each day final delivery of both dies is delayed beyond May 12, 1950, it being agreed that it would be impracticable to fix the actual damage suffered by us by reason of such delay. Eldon will pay the sum of $100.00 above the contract price for each day final delivery of both dies is made before May 12, 1950.

"Please sign and return to us the enclosed copy of this agreement.

ELDON MANUFACTURING Co.
By /s/ Robert Silverstein

Accepted:
By /s/ Earl A. Jackson
Seller."

tiffs responsible for any and all damages sustained. On receiving the notice plaintiffs informed defendant that they objected to the dies being sent elsewhere for correction. The dies were sent to a qualified die maker but all efforts at correction were unsuccessful. The court found that by reason of the defective dies defendant sustained various items of damage in the total sum of $9,203.09.

The only question presented is whether the findings support the judgment. There is nothing in the findings to indicate express or implied approval by defendant of the goods tendered by plaintiffs in satisfaction of their contract.

Appellant contends that the judgment is not supported by the findings since those above summarized required the court under Civil Code, section 1769, to allow defendant damages as found. Respondents do not answer this contention. They contend that since they had until May 12, 1950, to deliver proper dies the act of defendant in taking possession of the dies on May 10, 1950, and sending them elsewhere prevented and excused further performance. ▮ However, since plaintiffs pleaded full performance on their part and so proceeded at trial, they may not raise for the first time on appeal an excuse for nonperformance or claim prevention of performance. (*Daley* v. *Russ*, 86 Cal. 114, 117 [24 P. 867]; *Peek* v. *Steinberg*, 163 Cal. 127, 133 [124 P. 834].)

Prior to the Uniform Sales Act it was a pure question of fact whether the receipt and retention by the buyer was made in such a way as to indicate he was assenting to the tender of nonconforming goods. ▮ It has never been the law in California that mere acceptance of defective goods with knowledge of their defects cuts off a buyer's right of action for breach of an express warranty as a matter of law. (*North Alaska Etc. Co.* v. *Hobbs, Wall & Co.*, 159 Cal. 380, 383 [113 P. 870, 120 P. 27, 35 L.R.A.N.S. 501].) There were no findings that defendant waived the defects; all findings were to the contrary.

There have been no cases since adoption of the Uniform Sales Act indicating any change in this rule; the cases rather indicate that when a buyer has complied with the statutory notice requirements he has a cause of action for breach of warranty, express or implied. ▮▮ The court found that plaintiff warranted and represented that the dies would be fit for defendant's use in making the boxes according to the

drawings. This was an express warranty (Civ. Code, § 1732), and the articles to be manufactured were "goods" within the purview of the Uniform Sales Act (Civ. Code, § 1725).

A discussion of section 49 of the Uniform Sales Act, which is identical with section 1769 of the Civil Code, is found in 3 Williston on Contracts, section 714, where it is said:

"This section of the Statute [§ 49] amounts to this, that the seller's tender of the goods is treated as an offer of them in full satisfaction, but the buyer is allowed a reasonable time for accepting the offer. Moreover, if he declines to take the goods in full satisfaction he need not return them. The practical advantages of the statutory rule and its ease and certainty of application commend it.

"The section differs from other provisions of the Statute in changing substantially the common law of all or nearly all of the states. . . . [M]any states hold that at common law acceptance of title necessarily involves a release of the seller's liability from certain of his contractual obligations in regard to the goods. In other states this is denied unless there is an intent to surrender the seller's obligations. Under the common law as expounded in both of these classes of jurisdictions great difficulties in determining questions of fact are inevitable. . . . Subject to this requirement [prompt notice], the buyer's right against the seller is not destroyed by acceptance of title."

Since adoption of the Uniform Sales Act in 1931 only two prior California cases have considered the question of a buyer's right to damages after acceptance of defective goods. (*Whitfield* v. *Jessup*, 31 Cal.2d 826 [193 P.2d 1]; *Ice Bowl, Inc.* v. *Spalding Sales Corp.*, 56 Cal.App.2d 918 [133 P.2d 846].) Both of them involved only the question of prompt notice but both recognized that the statute (Civ. Code, § 1769), gives the buyer a right to sue despite acceptance if he has given the required notice.

Plaintiffs contend that the purpose of the notice requirement in the statute is to allow the seller time to rework the goods and that he was given insufficient opportunity to rework them. A complete answer to this contention is given by *Whitfield* v. *Jessup*, *supra*, 31 Cal.2d 826, 830: "It is doubtful that the seller has any such right. . . . But if that is a reason for the notice requirement it is not the only reason. As stated in *Columbia Axle Co.* v. *American Automobile Ins. Co.*, 63 F.2d 206, at page 207: 'While it may be one purpose of the notice required by the statute to permit the seller to

make inspection of the goods, whether in the hands of the vendee or not, it is certainly not its only purpose.' As stated by Judge Learned Hand, 'the purpose of the notice is to advise the seller that he must meet a claim for damages, as to which, rightly or wrongly, the law requires that he shall have an early warning.' (*American Mfg. Co.* v. *United States Shipping Board, etc.*, 7 F.2d 565 (C.C.A. 2).)'' Moreover, plaintiffs were given one opportunity to correct the defects and were unable to do so. Thereafter defendant sent the dies to an engineering company the court found to be ''an experienced and qualified die maker'' and also made a good faith effort to correct the defects in its own die shop. The case is one envisioned by the statute. Defendant was not precluded from recovering the damage sustained as a result of plaintiff's breach of contract.

Defendant seeks not only a reversal of the judgment but also a direction that judgment be entered in its favor for damages in accordance with the findings. It was found that as a result of plaintiffs' breach of the contract defendant had suffered damage in the amount of $9,203.09. Although defendant in its opening brief insisted that upon reversal judgment should be entered in its favor, plaintiffs have made no reply to that demand, nor have they indicated in any manner that a direction to amend the conclusions of law and to enter a different judgment would be improper.

The judgment is reversed with directions to amend the conclusions of law to conform to this opinion, to set off the unpaid balance of the contract price against the damage of defendant and cross-complainant and to enter judgment for the latter for the balance.

Wood (Parker), J., and Vallée, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied January 15, 1953.