[Civ. No. 32096. First Dist., Div. Two. Sept. 30, 1974.]

SOUTHERN PACIFIC COMPANY, Cross-complainant and Respondent, v.
UNARCO INDUSTRIES, INC., Cross-complainant and Appellant.

144

**COUNSEL**

Hanna & Brophy, Hanna, Brophy, Jakobsen, MacLean, McAleer & Jensen, Hanna, Brophy, MacLean, McAleer & Jensen and Donald R. Brophy for Cross-complainant, and Appellant.

Donald O. Roy for Cross-complainant and Respondent.

## OPINION

**BRAY, J.**\*—Appellant, Unarco Industries, Inc., appeals from judgment in favor of respondent, Southern Pacific Company, on appellant's cross-complaint against respondent and on respondent's cross-complaint against appellant.

### QUESTIONS PRESENTED

1. Evidence concerning condition of swivel pin properly admitted.

2. The jury passed on the issue of respondent's alleged negligence.

3. No waiver of the warranty.

4. Strict liability applies.

5. Mitigation of damages not an issue.

6. The judgment for attorneys' fees.

### RECORD

Feliciano Salcido originated this action against respondent, Southern Pacific Company, for personal injuries sustained October 21, 1966, at Richmond, California, while employed by Mutual Grocery Co., in unloading a box car belonging to respondent, when a "load divider" door fell upon him. Appellant was joined as a defendant in the action. Respondent cross-complained against appellant, the manufacturer and seller of the divider door and its component parts. The cross-complaint set forth five theories of action, breach of contract, express warranty, strict liability, and two other theories dismissed at the trial. The relief sought by the cross-complaint was reimbursement for any settlement or judgment paid to Salcido, costs of investigation and defense of the case, and reasonable attorneys' fees. Appellant then filed a cross-complaint against respondent on the theory of implied indemnity, based on an active-passive negligence contention.

Salcido's personal injury action was settled by respondent paying him $30,000 and appellant paying $750. The cross-actions were tried to a jury of eight, the jury returning a verdict in favor of respondent of $15,000, and judgment was entered thereon. Based on a stipulation here-

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

inafter referred to that the judge might rule on the question of attorneys' fees, an additional judgment in favor of respondent of $9,763.87 was entered.

FACTS

The divider doors and their component parts used by respondent were supplied by appellant. While considerable testimony was given as to the technical aspects of the divider door and its history, suffice it to say for the purposes of this appeal that it is a swivel bulkhead which runs on an overhead track and has "trolley" consisting of four trolley wheels which permits movement of the door from side to side. A swivel pin consists of a pin with a head which is inserted downward through the trolley and bolted to the door. It is this pin which failed in this case. The swivel pin permits rotation of the door a full 360 degrees. In the unlocked position, the entire weight of the door is suspended from the swivel pin. Therefore, the door was required to be locked in place whether the car was loaded or empty. In loading a freight car, the door is pushed over to the opposite door from which the car is being loaded. Merchandise is then loaded against the ends of the car. When it is almost to the door, the bulkhead is rolled into place, pushed as hard as possible against the load and locked into place, thereby preventing the load from shifting. The accident was caused by the swivel pin failing, causing the door to fall on and injuring Salcido.

Apparently, the original pin was designed in 1962 and 1963. In June 1966, the pin, identified as "C," in one of the doors supplied respondent by appellant, failed in the same manner that the Salcido pin failed later that year. In a discussion between representatives of the parties, changes in the pin were suggested and the pin was redesigned and on August 25, 1966, 30 newly designed "D" pins were delivered by appellant to respondent to replace an equivalent number of "C" pins. Fifty-seven days elapsed from the receipt of the new pins by respondent until the Salcido accident. None had been installed in any of respondent's cars.

The "C" pins (and it was a "C" pin which caused the accident) did not meet the manufacturer's specifications. Its Brinell hardness test was 176 and 179, whereas the specifications called for a Brinell range of 187 to 207. In the entire 500 to 600 cars equipped with this device and supplied by appellant in 1964-1965, there were no failures resulting in injury prior to the Salcido accident.

Appellant contended the cause of the pin's failure was "the pin has been subjected to loads which must have resulted from the car having been impacted or moved without the door being secured in place."

Respondent contended the pin failed because of metal fatigue, stress, and contrary to design specifications operating on the admittedly defective pin, the pin's head contacted the bottom of the carriage so that any bounce of the moving car slammed the pin harder and harder against the carriage rail.

Each side supported its theory with appropriate expert and employee witnesses.

1. ■ Evidence concerning condition of swivel pin properly admitted.

Appellant contends that evidence as to the strength characteristics and condition of the pin in the door which fell on Salcido should not have been admitted against it because, it asserts, such evidence was not relevant as to the issues between appellant and respondent. Appellant alleges that the contract to indemnify respondent did not include indemnification for any negligent acts of respondent and that respondent, under its purchase order agreement, preempted to itself a pin replacement program. Respondent's alleged negligence consisted of the following: that respondent had possession of the replacement (the "D" pin) for some six weeks prior to the Salcido accident; its pin replacement program was geared to the security of its own commercial business interests and it knew for four months prior to the accident that the "C" pin presented a hazard to workmen.

However, the evidence was relevant. To prove a case on the causes of action for breach of contract (the written warranty), express warranty and strict liability, respondent had to prove defects in the door system at the time of the accident. Moreover, no objection was made to the admission of the evidence, nor was any motion to strike it made. Also, appellant seemed to concede that the evidence was admissible for its counsel stated: "The question is whether on October 21, 1966, when the Salcido pin failed, there was something wrong with that particular pin that falls into the *categories of the five different causes of action S.P. has brought against my people*" (italics added).

2. ■ The issue of negligence.

Appellant contends that as to the cause of action for breach of contract (written indemnity) respondent was guilty of active, not passive, negligence

which would be a defense to that cause of action. Such negligence, if any, would not be a defense to the causes of action for breach of warranty and strict liability. Admittedly, the contract between the parties required appellant to indemnify respondent against loss on account of any claim that might be brought against it through any defect in the product furnished by appellant. ■ As appellant points out "An indemnity clause phrased in general terms will not be interpreted, however, to provide indemnity for consequences resulting from the indemnitee's own actively negligent acts." (*Markley* v. *Beagle* (1967) 66 Cal.2d 951, 962 [59 Cal. Rptr. 809, 429 P.2d 129].) ■ While an indemnity agreement may provide for indemnification against the indemnitee's own negligence, the one in the instant case did not so provide. As to the indemnity cause of action, the question submitted to the jury under proper instructions was whether, if respondent was negligent, that negligence was active or passive. If passive, the indemnity contract would apply. The case was tried without objection, on the theory that characterization of respondent's conduct as active or passive negligence was a question of fact for the jury to decide (see *Morgan* v. *Stubblefield* (1972) 6 Cal.3d 606, 626 [100 Cal. Rptr. 1, 493 P.2d 465]; *Baldwin Contracting Co.* v. *Winston Steel Works, Inc.* (1965) 236 Cal.App.2d 565, 572-573 [46 Cal.Rptr. 421].) ■ Where the parties try a case on the assumption that a particular issue is controlling or that other steps affecting the course of the trial are correct, neither party can change the theory for purpose of review on appeal (6 Witkin, Cal. Procedure (2d ed.) Appeal, § 281). ■ Instructions on the subject of the type of negligence which would bar recovery on the issue of indemnity, as well as on the other issues, fully covering the subject, were offered by appellant and given by the court. The jury determined that respondent was not actively negligent.

Appellant strongly contended that the fact that after the "C" pin had failed and appellant had supplied the "D" pins to respondent to replace the "C" pins, 57 days elapsed without the change being made. The evidence in justification of the delay was that in all the cars appellant had equipped with the "C" pin, no personal injury due to pin failure had been experienced prior to the Salcido accident. From the inception of the design in 1962 and 1963, appellant's manager of production engineering wanted to get away from the swivel pin and communicated this to his superiors. The jury could have contrasted respondent's 57-day delay with that fact. Also, there was the situation that customers did not want the cars assigned (the car in question was assigned to General Foods) taken out of service. It cannot be said that respondent's delay was so unreasonable that it amounted to either active or passive negligence as a matter of law. As part of its contentions that respondent was guilty of negligence,

appellant urges that the 57-day delay in installing the "D" pin constituted bad faith and was against public policy. The jury found to the contrary.

Taking the evidence as a whole, it would have supported a finding that respondent was guilty of either active or general negligence or of neither.

The jury passed on the issues favorably to respondent. ■ "Where the evidence is in conflict, the appellate court will not disturb the verdict of the jury . . . . The presumption being in favor of the judgment . . . the court must consider the evidence in the light most favorable to the prevailing party, giving him the benefit of every reasonable inference, and resolving conflicts in support of the judgment" (6 Witkin, Cal. Procedure (2d ed.) Appeal, § 245).

Appellant quotes section 572 of the first Restatement of Contracts for the proposition that it is against public policy to enter into an agreement to indemnify another against the consequences of committing a tortious act. While this proposition is true, it is totally inapplicable to the instant case. The indemnity clause here states that appellant shall indemnify respondent for loss it may suffer arising out of the purchase or use of the subject matter of the contract; not for loss it may suffer due to a tortious act respondent might commit.

3. ■ No waiver of warranty.

Because of a letter written by respondent's head mechanical officer August 25, 1966, to the chief mechanical officer at Sacramento, instructing the latter to change on 15 cars the pins to those supplied by appellant, stating that it was found that when the divider was down that the flange of the pin had worn to the extent that the flange pulled off the pin, allowing the bulkhead to come down, which, coupled with a provision in the purchase order granting respondent the right to make repairs, appellant contends respondent waived its right to indemnification.

Respondent's participating in the "replacement and upgrading program" could not constitute a waiver of its cause of action for breach of warranty. ■ "It has never been the law in California that mere acceptance of defective goods with knowledge of their defects cuts off a buyer's right of action for breach of an express warranty as a matter of law [citation]." (*Reininger* v. *Eldon Mfg. Co.* (1952) 114 Cal.App.2d 240, 243 [250 P.2d 4].) ■ Since respondent notified appellant that the "C" pins were defective as soon as respondent found out, respondent did

not waive the express warranty (see *Whitfield* v. *Jessup* (1948) 31 Cal.2d 826, 830 [193 P.2d 1]). Moreover, waiver was not pleaded as a defense. Waiver "must be pleaded to render it available as a defense" (*Mitchell* v. *Cheney Slough Irr. Co.* (1943) 57 Cal.App.2d 138, 145 [134 P.2d 34]). No instruction was offered on waiver and moreover the facts were fully developed for the jury and considered by it in connection with appellant's argument that respondent's conduct was a proximate cause of the accident, an issue upon which the court fully instructed.

### 4. Strict liability applies.

Appellant contends that assumption of risk and abnormal use of a product are defenses to an action based on strict liability. This is a correct statement of the law in California (*Barth* v. *B. F. Goodrich Tire Co.* (1968) 265 Cal.App.2d 228, 243 [71 Cal.Rptr. 306]). However, "For such a defense to arise, the user or consumer must become aware of the defect and danger and still proceed *unreasonably* to make use of the product" (*idem.*, p. 243; italics added). Also, it has been held that the obligation of a manufacturer to the ultimate user is such that it cannot delegate to its purchaser responsibility for the final inspection, corrections and adjustments necessary to make the product ready for use, and that the manufacturer cannot escape liability on the ground that the defect in the product was caused by something the purchaser did or failed to do (*Vandermark* v. *Ford Motor Co.* (1964) 61 Cal.2d 256, 261 [37 Cal. Rptr. 896, 391 P.2d 168]; *Alvarez* v. *Felker Mfg. Co.* (1964) 230 Cal. App.2d 987, 1003 [41 Cal.Rptr. 514]).

Appellant fails to articulate what error it claims the lower court committed in this area. It should be noted that the jury found that the product was used in a reasonable manner appropriate to the purpose for which it was intended. The jury was also instructed that the defect in the product must be found to be the proximate cause of the injury sustained by Salcido. Appellant apparently offered no instruction on assumption of risk.

### 5. Mitigation of damages not an issue.

It is not clear from appellant's brief what it is contending in its section on mitigation of damages. Such an issue was not pleaded nor were instructions on that subject offered or given. Apparently appellant is referring to its contention that respondent should have installed the new pin and then there would have been no injury to Salcido, respondent would not have had to pay him damages, and would not have had to look to appellant for indemnification. This, of course, is not the legal definition of mitigation of damages. However, the subject of respondent's failure to

install the new pin was presented to the jury, as we have hereinbefore stated.

Appellant contended that the settlement made by respondent with Salcido contained some amount for punitive damages, which would not be recoverable under the indemnity agreement. The jury was instructed to exclude from its verdict any sum that it found respondent paid Salcido for punitive damages, and obviously found that punitive damages were not considered in the settlement. ■ "A general verdict implies a finding in favor of the prevailing party of every fact essential to the support of his action or defense" (4 Witkin, Cal. Procedure (2d ed.) Trial, § 262, p. 3072).

6. ■ The judgment for attorneys' fees.

A most unusual situation occurs in connection with the award of attorneys' fees. At the beginning of the trial, respondent's counsel, Mr. Bilby, stated: "We have agreed in the event of a verdict for the plaintiff the question of attorneys' fees, both in the Salcido case and in this case, will be considered and ruled upon by the Judge as a matter of law." Appellant's counsel, Mr. Brophy, replied: "At his convenience, and he can discuss the matter with counsel on either side. Mr. Bilby: Yes. The court: Fine. Mr. Brophy: The severance of it and the not including of it in any judgment rendered doesn't render the judgment incomplete. The court: In other words, if there were a judgment on the verdict. Mr. Brophy: If there were a judgment on the verdict, you have got to enter that within 24 hours. The court: All right." Judgment on the verdict was rendered November 5, 1971. Judgment for attorneys' fees was rendered January 20, 1972. Appellant's notice of appeal refers only to the November judgment. Respondent contends, therefore, that there is no appeal from the attorneys' fees judgment. Appellant, on the other hand, refers to the well established rule of only one judgment and contends that the later judgment is void on its face. While the stipulation of the parties is considerably ambiguous, it is clear that the court interpreted it to mean that the court should await the determination of the jury on the merits issue and then should, at its convenience, determine the attorneys' fees issue. In view of the time taken by the court on this issue and the contents of the stipulation, a reasonable and fair interpretation of the stipulation because of the one judgment rule, is that it was contemplated that when the court should rule on the subject, its determination should be considered part of the original judgment. "The waiver may be express, by stipulation of counsel that no objection will be made to the ruling or procedure" (6 Witkin, Cal. Procedure (2d ed.) Appeal, § 271). Hence, the appeal from the November judg-

ment applied to that judgment as augmented by the attorneys' fees ruling. ██ "Notices of appeal, of course, are to be liberally construed to permit, if possible, a hearing on the merits" (*Holden* v. *California Emp. etc. Com.* (1950) 101 Cal.App.2d 427, 430 [225 P.2d 634]). Attorneys' fees are provided for in the indemnity contract and appellant has shown no reason why they were not properly granted by the court.

Judgment affirmed.

Taylor, P. J., and Kane, J., concurred.

A petition for a rehearing was denied October 30, 1974, and the opinion was modified to read as printed above.